**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

RECEIVED

2022 DEC -7  A 11: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| **CHRISTOPHER HANDLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | 2:22-CV-690-WKW-SMD |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I.  INTRODUCTION

1.  This is an action alleging discrimination in violation of Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101 *et. seq.* The plaintiff is an individual with a disability and had a history of disability. The defendant discriminated against him based on his disability in violation of the ADA. The plaintiff seeks injunctive relief, equitable relief, instatement, back pay, front pay, compensatory, and punitive, damages, and reasonable attorney fees and costs.

### II.  JURISDICTION

2.  This Court has jurisdiction pursuant to 28 U.S.C. §S1331, 1343(a)(4), 2201, 2202 and 38 U.S.C. S4323(b).

3.     The unlawful employment practices alleged were committed by the defendant within Montgomery and Chilton County, which are located in the Middle District of Alabama. Venue is proper pursuant to 28 U.S.C. §1391.

4.     The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by jury.

## III.    ADMINISTRATIVE PREREQUISITES

5.     The plaintiff timely filed a charge of discrimination within 180 days of the occurrence of the last discriminatory act. Attachment 1. The EEOC issued the plaintiff Notice of Right to Sue dated September 14, 2022 and timely filed this Complaint within 90 days of receipt of notice. Attachment 2.

## IV.    PARTIES

6.     The plaintiff, Christopher Handley, is an individual over the age of 19 years and a resident of Chilton County, Alabama. The plaintiff is qualified to perform his job with the defendant according to 29 U.S.C. §12111.

7.     The defendant, CSX Transportation, Inc., is an "employer" according to the ADA, 29 U.S.C. §2611, and is subject to compliance according to 42 U.S.C. 12111(5). At all times relevant to this action, the defendant employed at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the applicable calendar year. The defendant conducts business in Montgomery County, Alabama.

## V.    FACTUAL ALLEGATIONS

8.      The plaintiff re-alleges and incorporates by reference all of the foregoing factual allegations with the same force and effect as if fully set out in specific detail herein below.

9.      The plaintiff was employed by Defendant, CSX Transportation, Inc. (CSX) beginning on or about July 4, 2011.

10.     The plaintiff is a Conductor and is certified and qualified to perform the essential functions of the position.

11.     The plaintiff was based out of the defendant's Montgomery, Alabama location, which is part of the South Region.

12.     The plaintiff was born with Tourette Syndrome (TS), which is a condition of the nervous system characterized by sudden, repetitive, rapid, and unwanted movements or vocal sounds called tics. These tics are often worsened by excitement or anxiety and lessened during calm, focused activities.

13.     The plaintiff also suffers from anxiety, obsessive compulsive disorder (OCD), claustrophobia, and behavioral or conduct issues, mainly a short temper, all of which are common in people diagnosed with TS.

14.     The plaintiff's symptoms, when they arise, can usually be alleviated by a calm-down period where he is left alone.

3

15.    On the other hand, stress makes the episodes worse than they would be otherwise.

16.    The plaintiff long ago disclosed his disability to CSX and asked them to accommodate him.

17.    Prior to March 3, 2021, the plaintiff's supervisors had accommodated his disability by offering him calm-down periods as necessary.

18.    Usually, the plaintiff's supervisor would say he needed him and ask him to remain at work but would let him take a break of an hour or so to calm down.

19.    Soon after the COVID-19 pandemic began, the plaintiff realized that he could not wear a mask because of his claustrophobia.

20.    Wearing a mask makes the plaintiff feel like he is suffocating, and that he will hyperventilate.

21.    When masks were becoming commonplace, the plaintiff discussed his situation with his supervisors, and they agreed the plaintiff did not have to wear a mask.

22.    Instead, the plaintiff was excused from wearing a mask and did his best to stay six (6) feet away from other employees at all times.

23.    During the following year, no one at CSX had expressed any problem with this accommodation.

24.    If someone asked the plaintiff why he was not wearing a mask, they would accept his explanation.

25.    On March 3, 2021, the plaintiff was involved in an incident at work.

26.    The Manager of Train Operations (MTO), Ford, called Plaintiff to help clear out a subdivision.

27.    Superintendent Tony Ferrera pointed out that the plaintiff was not wearing a mask, which he claimed was required by federal guidelines and CSX.

28.    Claustrophobia, a medical condition, is an explicit exception to the federal guidelines.

29.    Ferrera asked the plaintiff if he had a medical excuse. The plaintiff told Ferrera that he would bring him a letter the following day if he wanted me to do so.

30.    Ferrera refused to listen and threatened to fire the plaintiff.

31.    This confrontation, which Ferrera provoked and escalated several times caused the plaintiff to get angry and experience a TS episode.

32.    The plaintiff felt an episode coming on and did not want to say or do anything that would jeopardize his employment.

33.    The plaintiff walked away to the back so he could tell Ford and Yardmaster Wade Logan that he needed to leave under FMLA so that he could calm down as he was having an episode. However, Ferrera kept telling the plaintiff not to leave.

34.    Ferrera sent MTO Keeble out to ask the plaintiff if he would stay.

5

35.    Ferrera again brought up the mask, and the he plaintiff explained his medical issues.

36.    The plaintiff told Ford and Logan that he needed to leave and why.

37.    Keeble asked the plaintiff to stay and to wear a mask.

38.    The plaintiff also told Ford and Logan, that he was leaving.

39.    The plaintiff also "marked off" indicating that he was leaving and needed FMLA leave.

40.    The plaintiff was disciplined because Ferrera claimed he abandoned his job and left without permission.

41.    The defendant suspended the plaintiff from work and placed him on unpaid leave.

42.    On March 5, 2021, CSX sent the plaintiff a letter informing him that CSX planned to conduct an investigation on March 10, 2021.

43.    On March 8, 2021, the investigation was postponed until March 18, 2021.

44.    The investigation was essentially a hearing with witnesses conducted by Assistant Superintendent of the Atlanta Zone, Kevin Ribeiro.

45.    Just before the hearing, the plaintiff applied for renewal of intermittent FMLA leave pursuant to company policy, which was approved.

46.    The plaintiff sent a completed CSX FMLA Request and Certification of Health Care Provider form to Laura Lieb in the Human Resources Department.

6

47.    On March 18, 2021, Ribeiro held a hearing that was attended by Ferrera and the plaintiff.

48.    At the hearing, the plaintiff was represented by Local Chairman Scott Merrell, UTU 762.

49.    CSX alleged that the plaintiff violated Rule 104.2 ("quarrelsome"), Rule 104.3 ("boisterous"), and Rule 104.7 ("leave work before designated off-duty time" without supervisor permission).

50.    During the hearing, Ferrera made a number of false statements, such as claiming that the plaintiff said he would rather be fired than put on a mask.

51.    Ferrera had threatened to fire the plaintiff if he did not put on a mask.

52.    Ferrera also falsely claimed that he told the plaintiff to go outside because he could not wear a mask.

53.    Instead, Ferrera told the plaintiff not to leave.

54.    During the incident, Ferrera was very confrontational and did not want to listen to the plaintiff, which made the situation worse than it needed to be.

55.    On March 25, 2021, CSX approved the plaintiff's application for intermittent FMLA leave.

56.    The plaintiff was approved for 1-8 episodes per month, 1 day per episode, and 1-3 office visits per year.

57.    The plaintiff is required to provide at least 30-day notice of office visits and as soon as possible of any leave related to episodes.

58.    On April 17, 2021, CSX sent the plaintiff a letter stating that, as a result of the investigation, he was assessed the "Time Served" on my suspension.

59.    The letter stated that it was the plaintiff's responsibility to call CSX and "mark up with Crew Management immediately following the conclusion of this suspension."

60.    However, the plaintiff did not receive this letter on April 17, 2021.

61.    Instead, the plaintiff received the letter the following day.

62.    After the plaintiff received the letter, he returned to work.

63.    However, the plaintiff was told he was supposed to have returned to work on April 17, 2021 and was given another 20 points for the absence.

64.    The plaintiff returned to work on April 19, 2021.

**VI.    DAMAGES**

65.    The plaintiff is a qualified individual with a "disability", as that term is defined by the Americans with Disabilities Act.

66.    The plaintiff could perform the essential functions of the job of Conductor and is certified and qualified to perform the essential functions of the position with or without reasonable accommodations.

67.     Through the actions and inactions described above, the defendant discriminated against the plaintiff based on his disability, history of a disability, and its perception of him as disabled.

68.     The defendant failed to engage in the interactive process and failed to provide a reasonable accommodation, if needed.

69.     The defendant unlawfully disciplined the plaintiff.

70.     Because of such conduct, the plaintiff has suffered emotional distress, embarrassment, and humiliation.

71.     The defendant's actions were willful, with malice and with reckless disregard for the plaintiff's rights.

## VII.   CAUSES OF ACTION

### COUNT I – CLAIM OF DISCRIMINATION PURSUANT TO TITLE I OF THE AMERICANS WITH DISABILITIES ACT – DISPARATE TREATMENT

72.     The plaintiff re-alleges and incorporates by reference all of the foregoing factual allegations with the same force and effect as if fully set out in specific detail herein below.

73.     The plaintiff's is a person with a disability and had a history of disability. See 42 U.S.C. §12102.

74.     The defendant is a covered entity and an employer in accordance with 42 U.S.C. §12111(5).

9

75.    The plaintiff is a qualified individual as defined under the ADA. *See* 42 U.S.C. §12111.

76.    Under the ADA, the defendant is prohibited from discriminating against the plaintiff by excluding or otherwise denying equal jobs or benefits to him, a qualified individual, because of the known disability. 42 U.S.C. §12112(a) and (b)(4).

77.    The ADA's protection against discrimination also prohibits utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. §12112(b)(3)(A).

78.    The defendant was aware of the plaintiff's disability and history of disability. The defendant denied the plaintiff equal benefits when it through the actions and inactions described above, discriminated against the plaintiff based on his disability, history of a disability, its perception of him as disabled, failure to engage in the interactive process and failed to provide a reasonable accommodation, if needed, in violation of the ADA, and disciplined him.

79.    In denying him equal benefits, the defendant has maliciously, intentionally, and with reckless disregard discriminated against the plaintiff as a person with disability and a record of disability and has otherwise classified and segregated the plaintiff in a way that has adversely affected his job opportunities because he is a person with a disability and a history of disability. *See* 42 U.S.C. §12112.

80.   Because of such conduct, the plaintiff has suffered emotional distress, embarrassment, and humiliation.

81.   The defendant's actions were willful, with malice and with reckless disregard for Plaintiff's rights.

## VI.   PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.   Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant, including the action taken against the plaintiff by the defendant, are violative of the plaintiff's rights as secured by Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

2.   Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant, and at the defendants' request, from continuing to violate the plaintiff's rights as well as those who are similarly situated pursuant to Title I of the Americans with Disabilities Act.

3.   Award the plaintiff damages including instatement, back pay, front pay, compensatory and punitive damages.

4.   Award the plaintiff reasonable costs, attorney's fees and expenses.

5.   Award such other relief and benefits as the cause of justice may require.

Respectfully submitted,

H. Wallace Blizzard (asb-8969-b59h)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
wblizzard@wigginschilds.com

**The plaintiff requests this Honorable Court to serve via certified mail upon the defendant the following: Summons, Complaint.**

**Defendant's Address:**
CSX Transportation, Inc.
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

H. Wallace Blizzard (asb-8969-b59h)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
wblizzard@wigginschilds.com

12