IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTOPHER HANDLEY,           )
                               )
         Plaintiff,            )
                               )
v.                             )   CIVIL CASE NO. 2:22-cv-690-ECM
                               )              [WO]
CSX TRANSPORTATION, INC.,      )
                               )
         Defendant.            )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

This case concerns the suspension of Christopher Handley ("Handley"), a current employee of CSX Transportation, Inc. ("CSX"), after Handley had a confrontation with his superintendent, Tony Ferrera ("Ferrera"), on March 3, 2021, over Handley's decision not to wear a face covering.  Handley has Tourette's Syndrome ("Tourette's") and claustrophobia and claimed he could not wear a face covering without exacerbating his symptoms.  Handley claims CSX's suspension of him was a form of disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.*, (the "ADA").[1]

Now pending before the Court is CSX's motion for summary judgment (doc. 26) and Handley's motion to amend the complaint (doc. 34).  The motions are fully briefed and

---

[1] Handley only includes one count of discrimination in violation of the ADA in his complaint. (Doc. 1 at 9). Both parties reference reasonable accommodations in passing (doc. 27 at 7; doc. 35 at 16), but the denial of a reasonable accommodation is neither separately plead nor argued by either party in-depth.

ripe for review.  After reviewing the parties' submissions, the Court finds that CSX's motion for summary judgment (doc. 26) is due to be GRANTED and that Handley's motion to amend the complaint (doc. 34) is due to be DENIED.

## II.  JURISDICTION

The Court has subject matter jurisdiction over the federal law claim in this proceeding pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

### A.   Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c).  The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper*, 906 F.3d at 1311.  The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252.  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.*  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

3

**B.     Amending the Complaint**

"Pursuant to FED. R. CIV. P. 15(a), a party seeking to amend its complaint after . . .

a responsive pleading has been filed, may amend the complaint 'only by leave of court or

by written consent of the adverse party; and leave shall be freely given when justice so

requires.'" *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007) (per

curiam) (quoting FED. R. CIV. P. 15(a)).  But when "a party's motion to amend is filed after

the deadline for such motions, as delineated in the court's scheduling order, [Federal Rule

of Civil Procedure 16(b) applies, and] the party must show good cause why leave to amend

the complaint should be granted." *Id.* (citing FED. R. CIV. P. 16(b); *Sosa v. Airprint Sys.*,

*Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam)).  "To establish good cause, the

party seeking the extension must have been diligent." *Romero v. Drummond Co.*, 552 F.3d

1303, 1319 (11th Cir. 2008) (citing *Sosa*, 133 F.3d at 1418; FED. R. CIV. P. 16 advisory

committee's note).  "If [a] party was not diligent, the [good cause] inquiry should end."

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008)

(quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

## IV.  FACTS[2]

CSX is a railroad transportation company that employs approximately 20,000

employees across the eastern United States and Canada. (Doc. 28-1 at 5).[3]  Since 2011,

---

[2] Because this case comes before the Court on CSX's motion for summary judgment, the Court construes the facts in the light most favorable to Handley, the nonmovant.  The Court draws all justifiable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] For clarity, the page numbers used in this opinion refer to the PDF page number assigned by the Court's CM/ECF system.

Handley has been an employee of CSX, based in Montgomery, Alabama, working as both a conductor and an engineer. (Doc. 28-3 at 12–13).

**A.    Handley's Medical Condition and Use of the Family Medical Leave Act**

Throughout his employment with CSX, Handley has had Tourette's.[4] (*Id.* at 18). According to Handley, his condition manifests as various tics and noises and a sensitivity to stressful situations that can trigger episodes. (*Id.* at 19, 21).  The tics and noises are constant, but the episodes do not regularly occur. (*Id.*).  During episodes, Handley can have trouble recalling what exactly occurred. (*Id.* at 23).  He also "will say things that [he] do[es] not] remember." (*Id.*).  Because of his condition, Handley has Family Medical Leave Act ("FMLA") accommodations that allow him to take off time for episodes and attend doctor's visits throughout the year. (*Id.* at 20–21).  CSX's FMLA policy dictates that Handley provide thirty days' notice for doctor's appointments when possible and provide notice of an episode "as soon as possible and practical." (Doc. 28-1 at 75–76).  Handley first applied for this accommodation in 2017, which CSX approved, and he has received the accommodation every year since.  (*See* Doc. 28-9).

The parties do not dispute that Handley has used his FMLA leave on occasion. According to Handley, he uses FMLA leave as little as possible. (Doc. 28-3 at 18).  Under CSX policy, if an employee is working at the time the need to take medical leave arises, the process for requesting leave requires two steps:  (1) notifying a supervisor and (2) calling the CSX employee line to mark the leave. (Doc. 28-2 at 11–12).

---

[4] While Handley has other neurological conditions as well, he only received formal accommodations for his Tourette's.

**B.    CSX's Covid-19 Policy**

In response to the evolving global Covid-19 pandemic, CSX issued a series of policies on face coverings in 2020 and 2021. (Doc. 28-1 at 7–8).  In early 2021, CSX followed the guidance of the Federal Railroad Administration and issued a policy entitled Covid-19 Coronavirus Protocol Update, Mandatory Face Coverings. (*Id.* at 8–9; doc. 28-10 at 2).  The updated policy required employees to wear face coverings "when social distancing separation of at least six feet is not possible or cannot be maintained." (Doc. 28-10 at 2).  The policy also required face coverings in "indoor areas." (*Id.*).  But the mandatory policy allowed for an exception to the general rule when an employee received an exemption for a medical reason. (Doc. 28-11 at 17).

**C.    Handley's Experience with the Covid-19 Policy**

Because of the combination of his Tourette's and claustrophobia, Handley contends he could not wear a face covering without exacerbating the symptoms of both conditions. (Doc. 28-3 at 24–25).  Before March 3, 2021, Handley had not formally requested a medical exemption from the face covering policy. (*Id.* at 26–28).  He had informal arrangements with his local managers which allowed him not to wear a face covering while working if he stayed six feet away from his coworkers or remained outside. (*Id.* at 27).  On March 2, 2021, while on a run to Mobile, Alabama, a supervisor of the Mobile terminal informed Handley that he needed a formal accommodation from his doctor to be excused from the face covering policy. (*Id.* at 28–29).  Handley subsequently began to work with his doctors to get the necessary documentation to receive the accommodation. (*Id.* at 25).

6

He was unable to complete the formal procedures necessary to receive an accommodation by March 3, 2021. (*Id.* at 26).

## D.    The Incident on March 3, 2021[5]

On March 3, 2021, while waiting to go out on a train, Handley sat in the crew room, an enclosed indoor space on the Montgomery terminal, without a face covering alongside his fellow employees. (Doc. 28-3 at 30–31; doc. 28-11 at 10–11; doc. 28-12 at 7, 13). Handley was the only one without a face covering. (Doc. 28-11 at 10; doc. 28-12 at 7–8). Handley acknowledged in his deposition that he was out of compliance with the general Covid-19 policy because he was not wearing a face covering within six feet of his co-workers but believed his noncompliance was excused because of his medical condition. (Doc. 28-3 at 23).    Ferrera, who recently became superintendent of the CSX zone[6] encompassing the Montgomery terminal, entered the crew room. (*Id.* at 30; doc. 28-11 at 10; doc. 28-12 at 7, 13).    Before March 3, 2021, Ferrera had never met Handley and knew nothing of his Tourette's diagnosis or accommodations. (Doc. 28-11 at 6, 8–10).    Upon entering the room, Ferrera, gesturing to his own face covering, asked Handley why he was not wearing a face covering and if he had a medical exemption. (*Id.* at 10; doc. 28-3 at 30). Handley responded that he could not wear a face covering because of his Tourette's and

---

[5] The parties dispute the non-material specifics of how Ferrera and Handley interacted on March 3, 2021. However, it is undisputed that Handley was not in compliance with the Covid-19 policy, and Ferrera confronted him about it.   Because Handley is the nonmovant, the facts are construed in the light most favorable to him. *See Liberty Lobby*, 477 U.S. at 255.

[6] CSX organizes parts of the United States and Canada into various "zones."   The superintendent, the position which Ferrera holds, is responsible for running his assigned zone.   Montgomery is in the Atlanta zone, and Ferrera briefly served as its superintendent.

claustrophobia but acknowledged he did not have a formal accommodation. (Doc. 28-3 at 30–31; doc. 28-11 at 10–11). Here, the conversation intensified. (Doc. 28-3 at 29–31; doc. 28-11 at 9–10). Ferrera asked Handley to either leave the room or put on a face covering, to which Handley responded he could not. (Doc. 28-3 at 30; doc. 28-11 at 9–10). Handley became upset, which sparked a Tourette's episode. (*Id.*). Handley and Ferrera continued their back-and-forth exchange. (*Id.*). During the conversation, someone said Handley could be "fired" for this behavior. (*Compare* doc. 28-3 at 30 *with* doc. 28-11 at 10). At this point, Handley left the room. (Doc. 28-3 at 30; doc. 28-11 at 10).

Once outside, Handley called the CSX employee line to take off work because he was having a Tourette's episode.[7] (Doc. 28-3 at 30–31). When in an episode, Handley cannot focus and knows it is unsafe for him to operate a train. (*Id.* at 21, 32). After speaking with the employee line, Handley went to his supervisor's office to report that he had to take medical leave. (*Id.* at 31; doc. 28-6 at 17). Upon entering the office, his supervisor was on the phone and did not fully understand the situation, but the supervisor heard Handley say he was leaving for the day because of his episode. (Doc. 28-6 at 17). After speaking with his supervisor, Handley departed the Montgomery terminal. (Doc. 28-3 at 31–32).

**E.    Administrative Hearing and Suspension**

Following the confrontation on March 3, 2021, Ferrera initiated disciplinary proceedings against Handley.   Ferrera charged Handley with violating three CSX

---

[7] Handley records all his phone conversations with CSX and disclosed a recording of this phone call during discovery.  During the conversation, Handley describes the interaction with Ferrera to a fellow employee who tries to get Handley to return to work.  Handley said, "I told [Ferrera] 'F**k you, I'll go home.'" (Doc. 28-13 at 0:51).  The parties agree Handley did not use this exact language when speaking with Ferrera but simply summarized the encounter to a fellow employee.

workplace rules:  (1) Rule 104.2 (prohibiting "quarrelsome" behavior); (2) Rule 104.3 (prohibiting "boisterous" behavior); and (3) Rule 104.7 (leaving work without the "permission of a supervisor"). (Doc. 28-5 at 7–9).  To initiate disciplinary hearings, Ferrera worked with CSX's labor relations department to formulate the exact charges. (Doc. 28-11 at 13).

The investigation began on March 4, 2021, and CSX notified Handley he was "being held out of service pending" the outcome of the investigation. (Doc. 28-14 at 2).  Consistent with CSX's investigation and disciplinary practices, a hearing was set for March 10, 2021. (*Id.*).  The hearing was eventually postponed to March 18, 2021. (Doc. 28-5 at 1–4).  In the intervening period, Handley's union representative informed him that CSX would consider dropping the charges if Handley would apologize to Ferrera. (Doc. 28-3 at 33).  Handley refused. (*Id.*).  He believed he need not apologize for his Tourette's. (*Id.*).

On March 18, 2021, CSX conducted the investigatory hearing. (Doc. 28-5 at 1). Assistant Superintendent Kevin Ribeiro ("Ribeiro") of the Atlanta zone acted as the Conducting Officer of the hearing, which was recorded and transcribed. (*See id.*).  Handley attended the hearing with his union representative. (*Id.* at 5).  At the hearing, Handley and Ferrera testified about the events of March 3, 2021. (*Id.* at 6–19).  After the hearing and investigation were complete, Ribeiro made findings of fact which he submitted to CSX management. (Doc. 28-2 at 10–11).  Following the hearing, Ribeiro verified the hearing transcript before the transcript was circulated among managers at CSX. (*Id.* at 7–8).  A manager in the labor relations department at CSX reviewed Handley's employee profile (which included his medical condition and accommodation) and upheld the suspension.

(Doc. 28-16 at 2).  CSX found that while Handley violated the three workplace rules alleged, his Tourette's "mitigate[d] why he had an outburst and left work" because he had a FMLA accommodation that allowed him to take leave while in an episode. (*Id.*). Upon review of all the relevant materials, CSX upheld Handley's discipline and assessed a suspension of "time served," which allowed Handley to return to work immediately. (Doc. 28-15 at 2).  Handley's suspension lasted approximately six weeks.  But upon the end of the suspension, Handley returned to work for CSX. (Doc. 28-3 at 39–40).

**F.    This Lawsuit**

Handley filed this lawsuit on December 7, 2022. (Doc. 1).  After the Court extended its deadline to respond, CSX answered the complaint on February 8, 2023. (Doc. 12).  The Court then issued a Uniform Scheduling Order which set the deadline to amend pleadings by January 19, 2024. (Doc. 22).   After the parties completed discovery, CSX filed its motion for summary judgment on July 22, 2024. (Doc. 26).  On August 15, 2024, Handley simultaneously filed his response in opposition to the motion for summary judgment (doc. 35) and a motion to amend the complaint, (doc. 34), which CSX opposed (doc. 40).

## V.  DISCUSSION

**A.    Disability Discrimination Frameworks**

Plaintiffs may show disability discrimination through either direct or circumstantial evidence.  Here, Handley offers circumstantial evidence to support the notion that CSX suspended him because of his Tourette's.  When relying on circumstantial evidence, a plaintiff may prove discrimination with either the *McDonnell Douglas* burden-shifting framework or "with circumstantial evidence so long as the evidence raises a reasonable

inference of [discriminatory] intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) (citing *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023)).  While this second test is referred to as the "convincing-mosaic framework," "it is a metaphor, not a legal test and not a framework." *Id.* at 1311 (internal citation omitted).

In ADA discrimination cases, the three-part *McDonnell Douglas* framework that governs Title VII employment-discrimination claims applies. *See Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (citing *Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)).  First, the plaintiff must establish a prima facie case of discrimination. *Id.*  "An ADA plaintiff establishes a prima facie case by showing (1) [he] has a disability; (2) [he] is a qualified individual under the ADA; and (3) the employer discriminated against [him] 'on the basis of disability.'" *Id.* (quoting and citing *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023); 42 U.S.C. § 12112(a)). As the Eleventh Circuit has stated, "a comparator analysis must be conducted [at the third prong of] the prima facie stage of the *McDonnell Douglas* framework—and not relegated to the pretext phase." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc) (*Lewis I*).  In the ADA context, the comparator analysis is especially relevant because the ADA's text "require[s] a plaintiff alleging disparate treatment to prove that he was treated less favorably than a similarly situated, non-disabled person." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275 (11th Cir. 2022). Second, after the plaintiff establishes a prima facie case, "the burden of production shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for its decision."

*Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. Feb. 16, 2024) (citing *Todd*, 998 F.3d at 1216). "This burden is 'exceedingly light'; the defendant must merely proffer non-[discriminatory] reasons, not prove them." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (citation omitted). Third, "the burden then shifts back to the [plaintiff] to present sufficient evidence creating a genuine issue of material fact that the [defendant]'s reason is pretext for discrimination." *Akridge*, 93 F.4th at 1191 (citing *Todd*, 998 F.3d at 1216).

If a plaintiff cannot present sufficient evidence to survive under the *McDonnell Douglas* framework, the plaintiff "will always survive summary judgment if he presents . . . 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.'" *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (alteration in original) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)) (*Lewis II*). Under either the *McDonnell Douglas* framework or a convincing-mosaic theory, Handley's claim fails.

## B.   *McDonnell Douglas* Framework

### 1.   *Prima Facie Case*

For the purposes of summary judgment, CSX argues Handley fails to satisfy the *McDonnell Douglas* framework "[e]ven assuming that [Handley] was a qualified individual with a disability." (Doc. 27 at 8). Under CSX's assumption, Handley meets the first two prongs of establishing a prima facie case of an ADA claim. *See Akridge*, 93 F.4th at 1191 (citing *Beasley*, 69 F.4th at 754). But Handley still must show CSX "discriminated against him 'on the basis of disability'" to satisfy the third prong of *McDonnell Douglas*.

*Id.* (citing *Beasley*, 69 F.4th at 754; then quoting 42 U.S.C. § 12112(a)).  Because Handley fails to offer sufficient—or any—comparator analysis to show that "[he] was treated differently from other individuals with whom [he] was similarly situated in all material respects," Handley cannot make a prima facie case of discrimination under *McDonnell Douglas*. *Lewis I*, 918 F.3d at 1217–18.

The Eleventh Circuit has made it clear that "a comparator analysis must be conducted at the prima facie stage of the *McDonnell Douglas* framework." *Id.* at 1224. The text of the ADA likewise "require[s] a plaintiff alleging disparate treatment to prove that [he] was treated less favorably than a similarly situated, non-disabled person" to meet the third prong of a prima facie case of discrimination. *Akridge*, 93 F.4th at 1194 (quoting *Sailboat Bend*, 46 F.4th at 1275).  Here, Handley fails to show any comparators ("similarly situated, non-disabled [people]") who received more favorable treatment than him. *See Sailboat Bend*, 46 F.4th at 1275; (*see also* doc. 35).  Simply, Handley does not identify or produce the evidence required by the Eleventh Circuit or the text of the ADA to make a prima facie case.  Because Handley fails to make his prima facie case, he does not carry his burden under the first step of the *McDonnell Douglas* framework.

But even if Handley offered sufficient comparators, the Court's decision under *McDonnell Douglas* would not change because the Court finds CSX offers legitimate, nondiscriminatory reasons for suspending Handley, which he fails to rebut.

### 2.    *Legitimate, Nondiscriminatory Reasons*

"[A defendant may suspend a plaintiff] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as the action is not for a

discriminatory reason." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (internal citation omitted).  CSX offers three separate reasons for its suspension of Handley:  (1) his boisterous behavior, (2) his quarrelsome behavior, and (3) his leaving work without the permission of a supervisor. (Doc. 28-5 at 7–9).  Each ground for suspension was based in CSX's employee policies. (*Id.*).  CSX reached the decision to suspend Handley after charges from Ferrera (doc. 28-11 at 13), an administrative hearing by Ribeiro (doc. 28-5), and a holistic review of the hearing transcript and Handley's employee profile by CSX labor relations (doc. 28-16 at 2).  CSX determined that Handley was boisterous and quarrelsome during his interaction with Ferrera and relied on these findings to issue a suspension of time served. (Doc. 28-16 at 2).  Labor relations management confirmed the decision and reasoned that Handley's specific circumstances explained his leaving work and made the penalty—and not additional punishment—appropriate. (*Id.*).  The three offered reasons qualify as legitimate, nondiscriminatory reasons for Handley's suspension. *See, e.g., Jones v. Aaron's Inc.*, 748 F. App'x. 907, 915 (11th Cir. 2018) (holding "disruptive conduct and insubordination" were legitimate reasons for disciplining an employee).

Even if the behaviors found by CSX to warrant suspension were related to Handley's Tourette's, it does not make the proffered reasons illegitimate.  In *Todd*, the Eleventh Circuit recognized that certain behaviors "likely stemmed" from the plaintiff's major depressive disorder. 998 F.3d at 1217.  But the root cause of these behaviors did "not mean the [defendant]'s proffered reasons . . . were discriminatory: the record does not support the proposition that the [defendant] declined to renew [the plaintiff]'s contract

14

because she had been diagnosed with major depressive disorder." *Id.* The same principle applies here. Handley's Tourette's perhaps exacerbated his response to Ferrara's questioning of his decision not to wear a face covering, but his response still warranted disciplinary action according to CSX's employee policies. Indeed, Handley's condition "mitigate[d]" the punishment he received. (Doc. 28-16 at 2). Based upon the evidence presented, the Court concludes that CSX offered legitimate reasons for suspending Handley.

### 3.    *Pretext*

"Because [CSX] presented [] legitimate, nondiscriminatory reason[s] for [suspending Handley], [Handley] must show that [CSX]'s proffered reason[s] [are] mere pretext for discrimination based on [his] disability." *Todd*, 998 F.3d at 1217–18 (citing *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)). Handley fails to dispute each reason offered by CSX is mere pretext. Instead, Handley argues that CSX's interpretation of the facts in the record is incorrect. (*See* doc. 35 at 17–20).

Construing the evidence and drawing all reasonable inferences in Handley's favor, he does not produce sufficient evidence to create a genuine dispute of material fact as to CSX's claim that it suspended him because of his behavior—being boisterous, being quarrelsome, and leaving work. Just because a behavior stems from a mental health condition "does not mean [CSX's] proffered reasons for [suspending Handley] were discriminatory." *Todd*, 998 F.3d at 1217.

CSX does not dispute that Handley's Tourette's likely contributed to his behavior, but it maintains that his condition does not excuse Handley from complying with CSX

policy.  Again, *Todd* is instructive.  In *Todd*, the decisionmaker heard from the plaintiff's colleagues that the plaintiff, a teacher, "ingested multiple Xanax pills during school, appeared agitated, and threatened to kill herself and her son—who was a student at the school." 998 F.3d at 1211.  But the plaintiff alleged that her termination was discriminatory because of her mental health condition. *Id.* at 1209–10.  The record, however, reflected "no genuine dispute that the [defendant] ended [the plaintiff's] employment because it believed she made threats against herself, other employees, and her son." *Id.* at 1217.  The plaintiff argued that there was a genuine dispute of material fact which precluded summary judgment because she claimed that she did not make the threats the defendant relied upon to end her employment. *Id.*  The Eleventh Circuit dismissed the argument because "at the pretext stage of the inquiry, we are unconcerned with the truth of the allegations that led to [the plaintiff]'s termination; 'our sole concern is whether unlawful discriminatory animus motivate[d]' the [defendant]'s decision not to renew [the plaintiff]'s contract." *Id.* at 1218 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).  "[The plaintiff] present[ed] no evidence to suggest that [the defendant] did not honestly believe that [the plaintiff] threatened herself, her son, and other employees, or that she ingested excessive amounts of Xanax while responsible for students at school.  As a result, the dispute about whether that underlying conduct occurred is not enough for [the plaintiff] to carry her burden for the pretext inquiry." *Id.*

Like the plaintiff in *Todd*, Handley disputes the underlying facts which led to his suspension.  He argues that he was neither boisterous nor quarrelsome with Ferrera on March 3, 2021, and that he left the terminal with permission because of his FMLA leave.

(Doc. 35 at 16–20). But Handley's dispute of the underlying facts do not create a genuine dispute of material fact for the purposes of summary judgment because he does not present evidence sufficient to rebut CSX's evidence that CSX "honestly believe[d]" Handley committed the misconduct for which he was suspended. *See Todd*, 998 F.3d at 1218. According to the record, Ferrera believed that Handley behaved in a "boisterous" and "quarrelsome" manner and left without permission on March 3, 2021, when Ferrera requested that Handley either put on a face covering or go outside. (Doc. 28-11 at 10–11). CSX labor relations affirmed Ferrera's assessment and did not indicate it doubted his reasons. (Doc. 28-16 at 2). Handley offers insufficient evidence to suggest that Ferrera, Ribeiro, or CSX labor relations did not honestly believe that Handley committed misconduct or had any discriminatory animus in suspending him. On this record, evidence of the "true" nature of the confrontation on March 3, 2021, does not create a genuine dispute of material fact which allows the claim to proceed. *See Todd*, 998 F.3d at 1218.

In sum, Handley fails to rebut each of the proffered reasons by CSX for his suspension. Handley's failure to rebut each proffered reason is "sufficient to warrant summary judgment for" CSX. *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1290–91 (11th Cir. 2018). CSX proffered legitimate reasons for suspending Handley, and Handley failed to produce sufficient evidence to place the proffered reasons in doubt.

## C.    Convincing Mosaic

Although Handley fails to meet his burden under *McDonnell Douglas*, Handley could still succeed under a convincing-mosaic theory. But Handley fails to do so here. "A plaintiff's mosaic may be made up of, among other things, (1) 'suspicious timing,

ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn'; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge*, 93 F.4th at 1198 (quoting *Lewis*, 934 F.3d at 1185).[8]

Handley does not produce sufficient circumstantial evidence to show that CSX suspended Handley because of his Tourette's. The summarized evidence that Handley presents in his response to the motion for summary judgment is: (1) Handley had a medical reason for not wearing a face covering and previously received informal accommodations, so Ferrera should not have requested Handley wear the mask; (2) Ferrera learned of Handley's Tourette's but did not reverse the suspension; (3) Ferrera was the aggressor on March 3, 2021; and (4) CSX wrongfully suggests that Handley used profanity during his conversation with Ferrera. (Doc. 35 at 16–20). Without more, this evidence does not raise an inference that CSX suspended Handley because of his Tourette's. *See Akridge*, 93 F.4th at 1197–99 (holding plaintiff's offered evidence of ambiguous statements before firing, gap between discovery of condition and termination, and plaintiff's contribution to rising healthcare costs did not present a convincing mosaic). Further, Handley fails to identify evidence of suspicious timing to support a finding of discriminatory intent. In any event, temporal proximity alone is insufficient to establish discriminatory intent. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (en banc).

---

[8] In his opposition to CSX's motion for summary judgment, Handley did not expressly argue that he could succeed under the convincing-mosaic framework.

Ultimately, Handley fails to identify specific statements by CSX and its employees, treatment of other employees, or any affirmative evidence outside the fact he was suspended to show discrimination.  Upon consideration of all the offered evidence, Handley fails to produce evidence that would "allow a jury to infer intentional discrimination." *Lewis II*, 934 F.3d at 1185 (quoting *Smith*, 644 F.3d at 1328).  Handley thus fails under the convincing-mosaic theory.

**D.    Motion to Amend the Complaint**

On August 15, 2024, the same day Handley filed his response in opposition to the motion for summary judgment (doc. 35), Handley filed a motion to amend his complaint (doc. 34).  In his motion, Handley seeks to add a new count for the violation of his FMLA rights. (Doc. 34 at 1).  Handley's counsel asserts that he filed the one-count complaint, seeking relief for an ADA violation, and "forgot to amend" the complaint to include a FMLA claim. (*Id.* at 1–2).  Because the request to amend comes nearly seven months after the deadline set by the Court's Uniform Scheduling Order—January 19, 2024 (doc. 22)—Handley must show "good cause" for why the motion to file an amended complaint should be granted. *See Sch. Bd. of Orange Cnty.*, 487 F.3d at 1366 (citing FED. R. CIV. P. 16(b); *Sosa*, 133 F.3d at 1419).  Handley fails to make such a showing.

To demonstrate good cause, the party seeking the extension must show that it diligently pursued the action but could not meet the deadlines of the scheduling order. *See Oravec*, 527 F.3d at 1232 (quoting *Sosa*, 133 F.3d at 1418; then citing *Johnson*, 975 F.2d at 609).  "If a party was not diligent," the inquiry ends. *Id.* (quoting *Johnson*, 975 F.2d at 609).  In *Southern Grouts & Mortars, Inc. v. 3M Co.*, the Eleventh Circuit held the district

court properly denied a motion to amend the complaint because the district court found the plaintiff was not diligent when (1) "the deadline to amend pleadings had come and gone five months earlier," (2) "both parties had filed their initial briefs in support of their motions for summary judgment," and (3) "fact discovery had been closed for a few weeks." 575 F.3d 1235, 1240–42 (11th Cir. 2009).  Indeed, the plaintiff in *Southern Grouts* "dallied too long" with information it already knew when it sought to amend its complaint after the filing for summary judgment. *Id.*  In fact, in its summary judgment motion, the plaintiff referenced the information it sought to introduce in its amended complaint a month later. *Id.* at 1242–43.  Because the plaintiff had the necessary information prior to summary judgment but did not file a motion to amend pleadings earlier, it did not pursue its claim diligently and failed to show good cause. *Id.* at 1240–43.

This case offers similar facts to *Southern Grouts*—the deadline to amend pleadings passed seven months prior to the filing of the motion to amend, both parties filed a brief in support of or against the granting of summary judgment, discovery has been closed for several weeks, and the party seeking to amend the complaint had the relevant information before summary judgment.  Further, Handley fails to show how despite his diligent efforts, he could not have met the deadlines given by the Court.  In his motion to amend the complaint, Handley's counsel states he "did not realize that the FMLA claim had not been included in the Complaint until he read [CSX]'s motion for summary judgment in this case. The only explanation counsel can offer is that [he] file[d] the Complaint to satisfy the deadline to file [Handley]'s ADA claim and forgot to amend [it] to add [Handley]'s FMLA claim because [he] believed [it] had been added." (Doc. 34 at 1–2).  Simply put, Handley

had all the relevant information at the time of filing, did not include it in the complaint, completed discovery, allowed all deadlines to pass, and sought to amend the complaint *after* CSX filed for summary judgment.  Counsel's oversight is not the diligent pursuit of a claim.  Because the Court finds Handley did not diligently pursue his claim, he fails to establish good cause and may not amend his complaint after the deadline established by the Uniform Scheduling Order.  *See S. Grouts*, 575 F.3d at 1240–42; *see also Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) (citing *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000)).

## VI. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED that CSX's motion for summary judgment (doc. 26) is GRANTED.  It is further

ORDERED that the motion to amend the complaint (doc. 34) is DENIED.

A separate Final Judgment will enter.

DONE this 3rd day of October, 2024.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE